The COUNTY OF NUECES, State of Texas

v.

**John FLOYD and Bob Garza et al.**

**No. 1655.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 23, 1980.

Rehearing Denied Nov. 20, 1980.

Michael J. Westergren, Nueces County Atty., Floyd Van Huseman, Maddin, White, Huseman, Pletcher & Powell, Inc., Corpus Christi, for appellant.

Richard W. Crews, Jr., Brin & Brin, Jorge C. Rangel, Kleberg, Dyer, Redford & Weil, John K. Buck, Pat Morris, Nicolas, Morris & Barrow, Pete Null, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit originally brought by John Floyd and Bob Garza against Nueces County, Texas, to recover damages to their land allegedly caused by the digging of a drainage ditch on property adjacent to their land. Suit was filed on April 14, 1975. Nueces County (the County), in addition to defending the suit, filed a third party action for indemnity against Leonard J. Svajda, Emil Mocha, Sr., and Emil Mocha, Jr., d/b/a Emilen Partners, and Mikkelson and Youngblood. The third party action was filed on November 5, 1976. Summary judgment was rendered that the County take nothing in its action against Mikkelson and Youngblood on December 5, 1977. After a jury trial with respect to the remaining parties, judgment was rendered on September 5, 1979, that John Floyd recover $4,800.00 from the County; that Bob Garza recover $5,600.00 from the County; and that the County recover, as indemnity, the total of the aforesaid sums of money from Leonard J. Svajda and Emilen Partners, third party defendants. Following the rendition of judgment, into which the summary judgment previously rendered in favor of Mikkelson and Youngblood was merged, the trial court granted Leonard J. Svajda and Emilen Partners' motion for a new trial, severed the third party action from the main suit, and rendered summary judgment that the County take nothing against Leonard J. Svajda and Emilen Partners. The County has appealed.

Our Cause No. 1654, styled "County of Nueces, State of Texas v. Leonard J. Svajda and Emilen Partners," is a companion case to the instant case. The appeal in that case is disposed of by judgment this day rendered by this Court.

■ The County, in its first point of error, contends that the judgment violates "the specific provisions of Tex.Const. art. I, § 17, because "the ditching operation and the resulting damages to the plaintiffs' property occurred before the land was sold to the plaintiffs and with the consent of the then–owner, Leonard J. Svajda and Emilen Partners." The point cannot be sustained.

In 1971, Svajda and Emilen Partners purchased a tract of land comprising about 79 acres of land, located in Nueces County, Texas. They subsequently subdivided the land into 15 lots. The subdivision was named the "Holiday Mini–Ranch Subdivision."

At some indefinite period of time, probably in late 1971 or early 1972, the County considered digging a ditch to alleviate a flooding problem in the general area. Plans were formulated and a survey was made by the County. The plans and survey were shown to Svajda, who, on behalf of himself and Emilen Partners, advised the County in a letter dated December 12, 1972:

"You have our permission to go onto the property and establish drainage along the easements provided ..."

On that date, Svajda and Emilen Partners owned Lots 4 to 11, both inclusive, in the Holiday Mini–Ranch Subdivision.

A drainage ditch was dug pursuant to the plans. The ditching operations were com-

pleted by the County in March, 1973. Floyd purchased Lot 7 (10.55 acres) of the Holiday Mini–Ranch Subdivision on May 23, 1973, and Garza purchased Lot 6 (10.36 acres) of the Subdivision on the same day.

The ditch itself was not situated on either Lot 6 or Lot 7, but was located upon Lot 5, on other lots in the Subdivision, and on lands outside the Subdivision. It was discovered, apparently in June, 1973, that the ditch altered the natural flow of water in the area and caused flood waters to intrude upon substantial portions of Lots 6 and 7, which damaged both lots.

On January 17, 1975, Floyd and Garza presented their claims for damages as a result of the flooding of their land assertedly caused by the construction of the drainage ditch in question to the Commissioners' Court of Nueces County, Texas, for allowance and payment. The Commissioners' Court rejected the claims on February 10, 1975. This suit was filed shortly thereafter.

Tex.Const. art I, § 17, in pertinent part, provides:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

The County has not briefed that portion of its point, wherein it is contended that the judgment of the trial court violated the stated portion of the Texas Constitution in that "the ditching operation and the resulting damage to the plaintiffs' property occurred before the land was sold to the plaintiffs." Consequently, the same has been waived and we do not notice it further. Rule 418(e), T.R.C.P.; *Nolan v. Bettis*, 577 S.W.2d 551 (Tex.Civ.App.–Austin 1979, writ ref'd n. r. e.).

The County contends, in essence, that Svajda and Emilen Partners, as a consequence of the above noted written consent to the ditching operations, waived any claim for damages caused by flooding as a result of the digging of the ditch, and that such action is binding upon Floyd and Garza, their vendees. We do not agree.

In support of its contention, the County relies heavily upon *Hightower v. City of Tyler*, 134 S.W.2d 404 (Tex.Civ.App.–El Paso 1939, writ ref'd). In that case, plaintiff, a land developer, built his own water and sewer lines in contemplation of a subdivision developed by him, which was subsequently annexed by the City of Tyler. The lines were constructed by following the specifications used by the City and for the sole purpose of connecting with City lines. When the subdivision was ultimately annexed by the City, plaintiff filed a lawsuit to recover from the City the cost of building and installing the water and sewer lines, which, at that time, were in use by the City. The Court refused to allow plaintiff to recover such cost, and, at page 406 of the published opinion, said:

"Having connected the water and sewer lines with the City's system for such service and received such service, and the City having put the lines to no other use than that contemplated by appellants, and the record showing that appellants made no reservation of any interest or right of use in the lines, we think it necessarily follows that appellants gave consent to the City to make such use of the lines as was made."

The County further relies on *Hale v. Lavaca County Flood Control District*, 344 S.W.2d 245 (Tex.Civ.App.–Houston 1961, no writ). In that case, plaintiffs presented a claim to the proper authorities and asked that they be compensated for a taking of their property by Lavaca County Flood Control District. The Special Commissioners, appointed by the County Judge, assessed damages at "None ($—) Dollars." Plaintiffs, by law, had ten days to contest the damages finding of the Special Commissioners. They did not do so within that time frame. Instead, plaintiffs waited six months after the no damage finding before they filed a lawsuit in District Court to recover their asserted damages for the taking of their land. Plaintiffs were denied a recovery on the ground that the failure to timely appeal the Special Commissioners' finding amounted to a consent to the taking of their property without compensation.

Neither *Hale* nor *Hightower* are in point. In *Hightower*, the landowner built the water and sewer lines for the express purpose of their use by the City upon annexation. He could hardly have been allowed to recover from the City for a use that he, as landowner, had always intended. In *Hale*, the landowner was held, in effect, to have been estopped by his failure to timely pursue his claim for damages. The "consent" doctrine was invoked to prevent him from litigating the matter in the District Court. Both *Hightower* and *Hale* are distinguishable on the facts from the case at bar.

The case at bar is a case to recover damages because of the refusal by the Commissioners' Court to assess damages pursuant to the provisions of Tex.Rev.Civ.Stat.Ann. art. 6730 (1960). The taking of land is not involved in this appeal.

 It is a well established rule in this State that the consent by a landowner to an entry on his land for the purpose of the construction of a public work operates as a waiver of any right to recover the land, to enjoin the work, or to recover damages for the taking; however, it is equally well settled that the consent to such an entry does not constitute a waiver of the landowner's constitutional right to thereafter recover for the damaging of his land by the public body involved, unless the circumstances are such that this is the only inference from the conduct of the landowner. *Galveston, H. & S.A.R.R. Co. v. Pfeuffer & Ireland*, 56 Tex. 66 (1881); *Willacy County Water Control, Etc. v. Todd*, 255 S.W.2d 320 (Tex.Civ.App.–San Antonio 1952, writ ref'd n. r. e.); *Carpenter v. Parmer County*, 51 S.W.2d 829 (Tex.Civ.App.–Amarillo 1932, no writ); *Morgan v. Oliver*, 60 Tex.Civ.App. 210, 129 S.W. 156 (Tex.Civ.App. 1910, writ ref'd).

 The record reveals that Floyd and Garza, in compliance with the provisions of Tex.Rev.Civ.Stat.Ann. art. 1573 (1962), timely and properly presented their claim for compensation to the Commissioners' Court for the damages sustained to their land as a result of flooding caused by the digging of the ditch in question. They had the legal right to sue for such damages when the Commissioners' Court failed to assess the same, as required by Article 6730.

Svajda and Emilen Partners consented only to the entry upon their land by Nueces County to construct the drainage ditch. They did not consent to any subsequent flooding that took place as a result of this entry. There was no consent by any landowner to the damaging of the lands involved within the purview of Tex.Const. art. I, § 17. There are no circumstances presented by the record which indicate that Svajda or Emilen Partners intended to waive their right to damages in the event the ditching operations caused their lands to be damaged. The County's first point is overruled.

In its third point of error, the County complains that the trial court erred in admitting testimony of the witness Rychetsky relating to the cause of damages to the lands in question because he "was not qualified as an expert on hydraulics or engineering." In the fourth point of error, the County asserts that the answers by the jury to Special Issues Nos. 1, 2, 3, 4, 5, 6, and 7 are against the great weight and preponderance of the evidence, and that the issues are unsupported by any expert testimony on the issue of causation of such damages. In disposing of the fourth point, multifarious though it may be, we follow the guidelines laid down by our Supreme Court in the case of *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The jury, in answer to Special Issue No. 1, found that the ditching operation in question was for the purpose of draining water from public roads. A county commissioner testified that "one of the reasons for cutting this ditch" was to "make sure that the roads do drain properly." The jury, in response to Special Issues Nos. 2 and 3, found that the ditching operation caused water to drain across the lands owned by Floyd and Garza. In answer to Special Issues Nos. 4 and 5, the jury found that the flooding caused by the ditching operations caused injury to the lands involved in this appeal.

Floyd and Garza testified that they actually saw water from rains come through the ditch and onto the lands in question. Svajda testified that prior to the digging of the ditch, he had never seen "over two or three inches of water on these properties after a rain," but "after the ditch was dug, the water literally flowed across it and eroded some of it away." The plans and survey made by the County before the ditching operations commenced show that it was intended that rainwater drain in the direction of Floyd and Garza's property after completion of the ditching operation.

■ The County argues in a general way that the answers by the jury to Special Issues 4 and 5 are against the great weight and preponderance of the evidence. With the exception of the testimony of the witness Rychetsky, there is no reference or discussion in the brief of the evidence which preponderates to the extent that the contested jury findings should not be allowed to stand. The County seems to take the position that there must be expert witness testimony regarding the questions submitted to the jury by the challenged issues in order to find support for those findings. We do not agree. A lay person may testify as to conditions which he observed on the land itself, and may testify as to the path water takes in its flow, and may testify to other facts relating to flooding when such facts are visible to him. *City of Austin v. Howard*, 158 S.W.2d 556 (Tex.Civ.App.–Austin 1941, writ ref'd w. o. m.).

There is no need to further discuss the testimony of the several witnesses relating to the question of injury to the surface of the lots. Suffice it to say that the photographs of the land which were introduced into evidence, the testimony of the County Engineer relating to "velocity changes" and "volume changes," as a result of the digging of the ditch, and the testimony of Floyd, Garza, Svajda, and Rychetsky concerning the actual flow of water across the involved lands after the ditch was completed, and the physical changes in the natural flow of water over the properties which occurred subsequent to the completion of the ditching operations, amply support the jury's answers to Special Issues Nos. 4 and 5. Whether the witness Rychetsky was an expert in the field of drainage is immaterial to the disposition of the issues relating to causation of the asserted damages.

■ Assuming, arguendo, that it was error to admit the testimony of Rychetsky, the error was harmless and did not constitute reversible error, since there was ample evidence from lay witnesses to support the jury's answers to Special Issues Nos. 1, 2, 3, 4, 5, 6, and 7. See Rule 434, T.R.C.P. The challenged answers by the jury are not against the great weight and preponderance of the evidence. The third and fourth points are overruled.

■ We now turn to the County's fifth point of error, wherein it is contended that the trial court erred in rendering summary judgment in favor of Mikkelson and Youngblood "for the reason that there existed a serious fact question concerning their liability for an actionable fraud against plaintiff." The point has no merit.

The lands in question were purchased by Floyd and Garza through Mikkelson and Youngblood, real estate brokers, who, prior to May 23, 1973, the date of purchase, did represent to the purchasers that Lots 6 and 7 were not subject to flooding. The County argues that because such representations were false, it is entitled to indemnity from Mikkelson and Youngblood for any damages which Floyd and Garza recover in their suit against Nueces County as a result of the flooding of their land. We disagree.

Irrespective of whether the cause of action, if any, brought by the County against Mikkelson and Youngblood was barred by the two year statute of limitations, there are other reasons why the trial court correctly granted Mikkelson's and Youngblood's motion for summary judgment. First, Mikkelson and Youngblood's only involvement with the plaintiffs Floyd and Garza was that of real estate brokers; their negotiation and sale of the property (as agents for the sellers) to Floyd and Garza was a transaction which is separate and

distinct from the ditching operations conducted by the County; any action which Floyd and Garza may have (or had) against Mikkelson and Youngblood for misrepresentation (fraud) did not arise out of the same transaction which forms the basis of the suit brought against the County by Floyd and Garza. Second, Floyd and Garza's cause of action against the County was a result of the damaging of their lands, which was caused by the digging of the drainage ditch, not by any misrepresentation by Mikkelson and Youngblood. Third, the pleadings of the County in its third party action conclusively show that Mikkelson and Youngblood neither owned nor breached a duty to Nueces County. Whether it breached a duty to the plaintiffs Floyd and Garza is of no concern to the County, and does not supply a basis for an action for indemnity against Mikkelson and Youngblood. See, *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949). Therefore, whether a serious fact issue existed concerning the liability of Mikkelson and Youngblood "for actionable fraud against the plaintiff," as argued by the County, is immaterial to the action brought against Mikkelson and Youngblood by the County.

As a matter of law, the County is not entitled to indemnity against Mikkelson and Youngblood. The trial court correctly granted the motion for summary judgment filed by Mikkelson and Youngblood, third party defendants. The fifth point of error is overruled.

The County in its second point of error complains of the action by the trial court in granting a new trial to Leonard J. Svajda and Emilen Partners and the rendering of summary judgment in their favor. This identical point is also raised by the County in its appeal in the above mentioned companion case, our cause No. 1654. We have discussed that point of error fully in our opinion this day handed down in the companion case. There is no need to discuss the point in this opinion. We have carefully considered the point in the instant appeal, and it is overruled.

The judgment of the trial court is AFFIRMED.

NYE, C. J., not participating.